UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LINDA ROZNOWSKI,

        Plaintiff,

v.

        Case Number 08-12026-BC
        Honorable Thomas L. Ludington

LIBERTY LIFE INSURANCE COMPANY,
INC. and PRUDENTIAL INSURANCE
COMPANY OF AMERICA, INC.,

        Defendants.
_____/

## OPINION GRANTING DEFENDANT LIBERTY LIFE'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Linda Roznowski's complaint alleges that neither Defendant Liberty Life Insurance Company's ("Liberty") or Defendant Prudential Insurance Company fulfilled their obligations pursuant to individual insurance policies. Prior to conducting discovery, Liberty moved for summary judgment. Dkt. # 11. Liberty asserts that Plaintiff is unable to advance a factual assertion surrounding the death of Clarence Roznowski ("Plaintiff's husband") that would permit her to recover the benefit under the the accidental death provisions of the policy. For the reasons stated below, the Court will **GRANT** Liberty's motion.

Although the motion was scheduled for oral argument on September 23, 2008, the relevant authority and facts have been set forth in the briefs. It is **ORDERED** that the motion be decided on the parties' pleadings. E.D. Mich. LR 7.1(e)(2).

I

For the purposes of its motion, Liberty accepts the facts as alleged in Plaintiff's complaint. On June 1, 2005, Plaintiff and Plaintiff's husband purchased a life insurance/accidental death policy.

On June 25 or 26, 2007, Plaintiff's husband passed away while sleeping. The sole focus of the instant motion is whether the cause of death was related to an illness or disease. In the years preceding his death, Plaintiff's husband suffered from chronic obstructive pulmonary disease, an enlarged heart, severe obstructive sleep apnea, and obesity.

In 2001, Plaintiff's husband underwent a series of medical tests to treat, including a sleep study that led to the diagnosis of severe obstructive sleep apnea. Consequently, doctors prescribed a continuous positive airway pressure device ("CPAP") to remedy Plaintiff's sleep apnea. A CPAP produces a constant flow of airway pressure. Dkt. # 11-5. Additionally, two alternative designs of CPAP devices exist. First, an auto-titrating positive airway pressure device ("APAP") produces a range of airway pressures to "overcome airway obstructions or apneas." *Id.* Second, a bi-level positive airway pressure device ("BPAP") provides a predetermined level of pressure during inhalation and reduced level during exhalation. *Id.* BPAP devises are intended for patients that cannot tolerate the inward pressure while exhaling. *Id.* Mindful that pulmonary disease reduces a patient's ability to exhale, doctors prescribed Plaintiff's husband a BPAP. Apparently, the BPAP improved Plaintiff's husband's sleep apnea and he continued to use the BPAP for some six years.

On June 8, 2007, Plaintiff's husband underwent another sleep study to evaluate whether the equipment should be altered. Dkt. # 17-2, 17-3. On June 25, 2008, the sleep study report was issued, which prescribed that Plaintiff's husband continue to use a BPAP with an inhalation pressure of sixteen and exhalation pressure of thirteen. Dkt. # 17-2 at 3. The test yielded similar results and doctors continued to prescribe a BPAP adjusted with the similar settings. The prescription, however, did call for a new mask because the current mask no longer made a tight seal against his face. Dkt. # 17-2 at 2. Plaintiff emphasizes that the sleep study did not identify any "medical

problems," Dkt. # 16 at 6, although it does note pulmonary disease and history of congestive heart failure with coronary heart disease. Dkt. # 17-2 at 3.

Alpena Oxygen filled the prescription later that day. According to a July 3, 2007 letter from Alpena Regional Medical Director Pam Dietz, Plaintiff's husband noticed that the CPAP provided by Alpena Oxygen did not match the prescription. Dkt. # 17-4 at 1. Alpena Oxygen inadvertently provided an APAP instead of the prescribed BPAP. *Id.* Plaintiff contacted Alpena Oxygen to inform them that it provided the incorrect type of CPAP. *Id.* An Alpena Oxygen technician told Plaintiff's husband that he "should still use the machine" and that the APAP would be exchanged for a BPAP the next day. *Id.*

After having that conversation, Plaintiff's husband slept while using the APAP device. Plaintiff's husband expired that night. Pathologist James D. Banner, D.O., determined that the cause of death was dilated cardiomyopathy and also noted pulmonary edema. Dkt. # 17-5. The certificate of death listed "probable sudden cardiac death," cardiomyopathy, and obesity as "diseases, injuries, or complications [] that directly caused the death." Dkt. # 11-4. The certificate also noted that pulmonary disease, sleep apnea, and type II diabetes were "other significant conditions." *Id.*

Plaintiff requested that Liberty pay accidental death benefits pursuant to the policy. Dkt. # 17-6. Liberty denied the request, contending that Plaintiff's husband's illnesses contributed to his death. The policy provides that it will pay accidental death benefits if the death is "the direct and sole result of injuries sustained in a [c]overed [a]ccident." Dkt. # 11-3 at 1. A "covered accident" is "an accident, subject to [e]xclusions, which occurs after the [e]ffective [d]ate shown in the [c]ertificate [s]chedule and while [the] [c]ertificate is in [f]ull [f]orce." *Id.* The policy delineates twelve causes of death that are excluded from the "covered accident" provision. The provision

states in pertinent part that "[a] [b]enefit will not be payable under this [c]ertificate if your [a]ccidental [d]eath results directly or indirectly from disease, illness or infirmity of the body or mind. *Id.* at 2.

Liberty's motion for summary judgment is before the Court. The parties have yet to conduct any discovery.

II

A motion for summary judgment under Federal Rule of Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. Under Rule 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002). A defendant may move for summary judgment at any time. Fed. R. Civ. P. 56(b).

III

The parties are largely in agreement with respect to the controlling law, but differ on whether Plaintiff will be able to demonstrate that the cause of her husband's death is covered by the policy. Under Michigan law, the interpretation of a contract is a question of law. *Royal Ins. Co. of America*

*v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 421 (6th Cir. 2008) (citation and quotation omitted). "The question of whether the language of a written agreement is ambiguous is one of law; therefore, it may be resolved summarily." *Parrett v. American Ship Bldg. Co.,* 990 F.2d 854, 858 (6th Cir. 1993) (citations and quotation omitted). When a contract is clear and unambiguous "there is no issue of fact to be determined." *Royal*, 525 F.3d at 421 (citation and quotation omitted).

The relevant policy provisions are unambiguous. The policy does not provide coverage for any death that is directly or indirectly related to an illness or disease. Indeed, Plaintiff acknowledges that the policy is unambiguous and that she must demonstrate her husband's death was unrelated to an illness or disease. Thus, the inquiry shifts to whether it is possible for Plaintiff to factually demonstrate that her husband's death is unrelated to an illness or disease.

An exclusionary provision in an insurance policy that restricts payment under an accidental death policy when death is indirectly related to an illness or disease applies when the policy holder's death is indirectly caused, in part, by a disease. *Berger v. Travelers Ins. Co.*, 149 N.W.2d 441, 442-43 (Mich. 1967); *see also Knight v. Bankers Life & Cas. Co.*, 29 F. Supp. 2d 417, 421-22 (E.D. Mich. 1998). For instance, the Sixth Circuit concluded that a similar provision barred recovery under an insurance policy when the policy holder passed away after accidentally falling down a flight of stairs triggered a blood disorder, which was exacerbated by preexisting cirrhosis of the liver. *Ann Arbor Trust Co. v. Canada Life Assur. Co.*, 810 F.2d 591, 592-93 (6th Cir. 1987). The Court summarized the relevant analysis as follows:

> When a policy insuring against accidental death contains exclusionary language substantially to the effect that benefits are precluded where death directly or indirectly results from or is contributed to by disease, the inquiry is properly limited to determining if the accident alone was sufficient to cause death directly and independently of disease; an exclusionary clause therefore precludes recovery where death results from a pre-existing disease or from a combination of accident and

pre-existing disease.

*Id.* at 593. Thus, the burden is on Plaintiff to demonstrate that her husband's death was the sole result of an accident, not a combination of accident and illness.

Although Plaintiff emphasizes the improvement of her husband's health from 2001 until the date of his death, the record demonstrates that he continued to suffer from pulmonary disease. Indeed, the reason that he required a BPAP instead of an APAP was to account for the breathing difficulties associated with pulmonary disease. Consequently, Liberty asserts that Plaintiff is unable to demonstrate that his death was wholly unrelated to sleep apnea or pulmonary disease and other related heart conditions.

In response, Plaintiff emphasizes that the motion precedes discovery in this case. Plaintiff believes that a reasonable opportunity exists to discover information that the cause of death was unrelated to the preexisting conditions. Further, Plaintiff advances a theory that use of an APAP directly led to her husband's suffocation. At face value, Plaintiff advances a potentially viable theory that her husband's death was an accident. Plaintiff's theory, however, inherently relies on the fact that her husband's pulmonary disease played an indirect role in his death. Plaintiff alleges that her husband required a BPAP because his pulmonary disease reduced his ability to exhale. Alpena Oxygen mistakenly provided Plaintiff's husband with an APAP that, according to Plaintiff, caused her husband's death because it exerted too much pressure during exhalation.

Liberty's reply brief emphasizes the dilemma embedded in Plaintiff's theory. Essentially, Liberty contends that Plaintiff will be unable to demonstrate that the suffocation caused by the APAP was entirely unrelated to an illness. In other words, if Plaintiff's husband had not suffered from pulmonary disease, no reason would have existed for him to use a BPAP instead of an APAP.

Plaintiff's theory inherently relies on the factual assertion that her husband had a limited ability to exhale as a result of pulmonary disease. Consequently, Plaintiff is unable to demonstrate that the death was entirely unrelated to a disease or illness and the result of an accident alone.

IV

Accordingly, it is **ORDERED** that Defendant Liberty Life Insurance Company's motion for summary judgment [Dkt. # 11] is **GRANTED**. The claim asserted against Defendant Liberty Life Insurance Company is **DISMISSED WITH PREJUDICE**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: September 24, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 24, 2008.

s/Tracy A. Jacobs
TRACY A. JACOBS